UNITED STATES DISTRICT COURT
EASTERN DISTRCT OF NEW YORK
------------------------------------------------------------------------x
CORY WRIGHT

                                        Plaintiff,

        -against-

RUDOLPH F. CREW, as President, Medgar Evers College;
JERALD POSMAN, as Senior Vice President and Chief
Operating Officer, Medgar Evers College and ESTHER
HUNDLEY, as Safety Officer, City University of New York,
each being sued in their individual capacity as employees' of
the City University of New York

                                      Defendants'
------------------------------------------------------------------------x

Second Amended Complaint

16 cv 1108

Jury Trial Demand

The plaintiff CORY WRIGHT by his attorney The Sanders Firm, P.C., as and for his second amended complaint against defendants' RUDOLPH F. CREW; JERALD POSMAN and ESTHER HUNDLEY respectfully set forth and allege that:

## INTRODUCTION

1. This is a civil rights action filed against defendants' RUDOLPH F. CREW; JERALD POSMAN and ESTHER HUNDLEY to vindicate his rights along with other employees within Facilities Management who were subjected to retaliation after making complaints about fraud, corruption and waste of taxpayers' monies thereby creating dangerous conditions within the life safety systems and other systems at Medgar Evers College Administrative Building No.: 1 aka AB1.

2. Plaintiff alleges on or about April 5, 1944, Governor Thomas E. Dewey signed Chapter 524 of the Laws of 1944, creating the Dormitory Authority of the State of New York

(DASNY) for the purpose of financing and constructing dormitories at 11 State Teachers' Colleges.

3. Plaintiff alleges in 1966, legislation was signed authorizing DASNY to work with the newly-established City University Construction Fund on a rapid and extensive expansion of the higher education facilities for the City University of New York (CUNY).

4. Plaintiff alleges DASNY has grown into one of the largest financiers and builders of social infrastructure facilities in the United States.

5. Plaintiff alleges since 2007, CUNY and DASNY through its employees, vendor partners and other agents' intentionally covered up fraud, corruption and waste of taxpayers' monies creating dangerous conditions within the life safety systems and other systems at AB1.

6. Plaintiff alleges in collusion with agents of CUNY and DASNY, defendants' RUDOLPH F. CREW; JERALD POSMAN and ESTHER HUNDLEY intentionally covered up fraud, corruption and waste of taxpayers' monies creating dangerous conditions within the life safety systems and other systems at AB1 compromising the physical safety of employees, students and other stakeholders of the community.

## JURISDICTION AND VENUE

7. The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

    a. the Civil Rights Act of 1871, 42 U.S.C. § 1983, providing for the protection of all persons in his civil rights and the redress of deprivation of rights under color of law and

    b. the First Amendment of the United States Constitution, guarantees freedoms concerning religion, expression, assembly, and the right to petition.

8. The unlawful employment practices, violations of plaintiff's civil rights complained of herein were committed within the Eastern and Southern Districts of New York.

## PROCEDURAL REQUIREMENTS

9. Plaintiff has filed suit with this Court within the applicable statute of limitations period.

10. Plaintiff is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1871.

## PLAINTIFF

11. Plaintiff CORY WRIGHT is a male citizen of the United States of America, over twenty-one (21) years of age and former employee of the City University of New York (CUNY) more specifically MEDGAR EVERS COLLEGE (MEC).

## DEFENDANTS'

12. Defendants' RUDOLPH F. CREW RUDOLPH F. CREW, as President, Medgar Evers College; JERALD POSMAN, as Senior Vice President and Chief Operating Officer, Medgar Evers College and ESTHER HUNDLEY, as Safety Officer, City University of New York.

## BACKGROUND

13. Plaintiff alleges defendants' RUDOLPH F. CREW; JERALD POSMAN and ESTHER HUNDLEY in collusion with agents of CUNY and DASNY retaliated against him, terminating his employment, violating his civil rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983 and the First Amendment of the United States Constitution for reporting that CUNY and DASNY, their agents' and vendor partners intentionally covered up fraud, corruption and waste of taxpayers' monies creating dangerous conditions within the life safety systems and

other systems at AB1 compromising the physical safety of employees, students and other stakeholders of the community and avoidable increased construction costs to the taxpayers.

14. Plaintiff alleges in or around winter 2007 CUNY and DASNY though its vendor partnership with The McKissack Group and Turner Construction acting as the General Contractors begin construction on the MEC AB1 located at 1150 Carroll Street Brooklyn, N.Y.

15. Plaintiff alleges AB1 is an approximately 190,000 square foot, five (5) story building to house the School of Science, Health and Technology.

16. Plaintiff alleges the AB1 interior spaces include thirteen (13) general classrooms, five (5) computer laboratories and a three hundred fifty (350) seat dining hall and kitchen.

17. Plaintiff alleges CUNY and DASNY financed the construction of AB1 using funds allocated by the City of New York and State of New York, the final cost to taxpayers approximately $247 million dollars.

18. Plaintiff alleges shortly thereafter, he interviewed with CUNY for the position of MEC Principal Custodian Supervisor.

19. Plaintiff alleges shortly thereafter, based upon his training, education and experience, he was offered the position as the MEC Principal Custodian Supervisor with the understanding he would transferred to MEC Supervisor of Mechanics after one month.

20. Plaintiff alleges in or around fall 2008, based upon his training, education and experience, he was promoted to MEC Administrative Superintendent.

21. Plaintiff alleges as the MEC Administrative Superintendent he was responsible for managing all trade personnel and the maintenance of all MEC facilities.

22. Plaintiff alleges in or around winter 2009, based upon his training, education and experience, he was promoted to Chief Administrative Superintendent. His responsibilities were

broadened to include the overall management of the personnel assigned to buildings and grounds as well as the maintenance of all MEC facilities.

23. Plaintiff alleges while AB1 was under construction, he requested permission through the CUNY and DASNY agents' and/or vendor partners and was granted access to the construction site.

24. Plaintiff alleges based on his training, education and experience while making general observations along with several subordinate MEC trade personnel, he noted serious deficiencies within the mechanical, electrical, and plumbing systems that can only be explained as fraud, corruption and waste of taxpayers' monies.

25. Plaintiff alleges while making these general observations, he documented numerous instances of missing air dampers and duct work, missing dedicated electrical services lines, dissimilar metal throughout the building, etc.

26. Plaintiff alleges CUNY and DASNY vendor partners intentionally used the aforementioned actions to increase profit for themselves and agents' of CUNY and DASNY.

27. Plaintiff alleges he was able to observe such deficiencies because the interior walls weren't finished with sheetrock.

28. Plaintiff alleges he immediately forwarded these serious deficiencies to Former MEC Campus Planning Director Frank Tumminello.

29. Plaintiff alleges that Former Campus Planning Director Frank Tumminello as the CUNY and DASNY liaison, in turn notified agents of both agencies.

30. Plaintiff alleges immediately after he filed his complaints about fraud, corruption and waste of taxpayer's monies, he and other MEC personnel were DENIED further access to the construction site.

31. Plaintiff alleges in or around spring 2009 CUNY and DASNY hired vendor partner Hudson Meridian aka Meridian, a professional construction management firm to oversee the construction and turnover certification of AB1. CUNY and DASNY assigned agency oversight of vendor partner Meridian to defendant ESTHER HUNDLEY.

32. Plaintiff alleges CUNY and DASNY paid vendor partner Meridian more than one million dollars ($1,000,000.00) of taxpayers' monies to supervise the commissioning of AB1 including the installation of furniture and lab equipment, training of staff, etc.

33. Plaintiff alleges instead of ensuring AB1 would be delivered in a cost efficient and safe manner, Meridian intentionally covered up fraud, corruption and waste of taxpayers' monies creating dangerous conditions within the life safety systems and other systems at AB1 compromising the physical safety of employees, students and other stakeholders of the community.

34. Plaintiff alleges Meridian as CUNY and DASNY vendor partner intentionally covered up fraud, corruption and waste of taxpayers' monies to increase profit for themselves and agents' of CUNY and DASNY.

35. Plaintiff alleges AB1 is constructed in such an unsafe manner, DASNY and CUNY MUST shut it down for immediate repairs to its life safety systems and other systems, also authorize the New York State Attorney General and other governmental agencies to pursue its vendor partners for fraud, corruption and waste of taxpayers' monies.

36. Plaintiff alleges CUNY and DASNY through its agent defendant ESTHER HUNDLEY are fully aware of the fraud, corruption and waste of taxpayers' monies and the serious safety deficiencies within AB1.

37. Plaintiff alleges in or around fall 2010 CUNY and DASNY informed the management of MEC that AB1 was fully commissioned and Meridian its vendor partner was ready

to turn the building over despite the cooling system not functioning properly.

38. Plaintiff alleges in or around winter 2010 CUNY and DASNY vendor partners flushed orange milk shake like substances out of the AB1 cooling system.

39. Plaintiff alleges him and other MEC personnel discovered CUNY and DASNY vendor partners intentionally improperly installed AB1 boilers that caused them to leak and steam at the explosion door.

40. Plaintiff alleges CUNY and DASNY vendor partners intentionally improperly installed AB1 boilers to increase profit for themselves and agents' of CUNY and DASNY.

41. Plaintiff alleges due to the intentional improper installation of the Fulton Steam Boilers by CUNY and DASNY vendor partners, they over humidified the laboratory spaces.

42. Plaintiff alleges this caused the laboratories to become soaked, all equipment was prematurely rusting, and the wood fire doors did not close.

43. Plaintiff alleges the laboratories were intentionally positively pressured in direct violation of the OSHA Laboratory Code.

44. Plaintiff alleges it's absolutely impossible that CUNY and DASNY vendor partner Meridian could've turned over AB1 with these unresolved dangerous conditions unless they were actively concealing fraud, corruption and waste of taxpayers' monies.

45. Plaintiff alleges in or around spring 2011 due to "inefficient communication" between the Fulton Steam Boilers and the laboratory environment, the laboratory had to be closely monitored.

46. Plaintiff alleges after a closer examination, he and other MEC personnel discovered sensors were intentionally placed inside of the ductwork instead of the laboratory environment causing the drastic overshooting of humidification.

47. Plaintiff alleges CUNY and DASNY vendor partners intentionally installed the sensors inside of the ductwork to increase profit for themselves and agents' of CUNY and DASNY.

48. Plaintiff alleges the Building Management System (BMS) was therefore rendered useless to monitor humidity levels within the laboratory environment.

49. Plaintiff alleges since the BMS couldn't effectively monitor the humidity levels within the laboratory environment, MEC personnel was assigned to manually monitor such levels (impossible) increasing the likelihood of a catastrophic system failure endangering the integrity of AB1, its occupants and citizens within the immediate areas surrounding the building.

50. Plaintiff alleges due to intentional faulty installation, the untampered fresh air from the dog houses and air intake literally destroys the equipment inside of the boiler room.

51. Plaintiff alleges the intentional poor design, installation and operation of the exhaust fans by CUNY and DASNY vendor partners resulted in a cracked wall in the penthouse, cracked B wall in the basement and contributed to a gas leak in the gas meter room since 2010.

52. Plaintiff alleges the exhaust fans have a direct operational relationship with the fume hoods, since they are operating ineffectively the fume hoods are actually life threatening equipment instead of life safety equipment.

53. Plaintiff alleges CUNY and DASNY vendor partners intentionally used the aforementioned actions to increase profit for themselves and agents' of CUNY and DASNY.

54. Plaintiff alleges during the construction of AB1, CUNY and DASNY vendor partner Meridian contracted with subcontractor JCI to install the BMS and the Fire Alarm System. According to the original scope, these systems were intentionally designed to communicate.

55. Plaintiff alleges CUNY and DASNY vendor partner Meridian turned over AB1 to CUNY despite the BMS and Fire Alarm System failing to communicate.

56. Plaintiff alleges CUNY and DASNY vendor partner Meridian intentionally covered up fraud, corruption and waste of taxpayers' monies to increase profit for themselves and agents' of CUNY and DASNY.

57. Plaintiff alleges in or around summer 2011 there was a report prepared by a CUNY and DASNY vendor partner analyzing the condition of the piping that concluded the water treatment or lack thereof was administered by vendor partner Ambient Water Treatment Consulting Inc.

58. Plaintiff alleges the iron exceed acceptable levels causing rust aka corrosion. Each time the strainers and tower basins were flushed, this orange milk shake substance was removed.

59. Plaintiff alleged CUNY and DASNY through its employees' and other agents' intentionally covered up this fraud, corruption and waste of taxpayers' monies, simply adding rust inhibitor to the water system but, this is an indication of a larger problem.

60. Plaintiff alleges the intentional addition of rust inhibitor by the CUNY and DASNY vendor partner only hastened the degradation of the valve seals and accelerating corrosion throughout AB1 increasing the costs to the taxpayer.

61. Plaintiff alleges once the chillers began surging out of control due to water flow issues, CUNY met with executives of DASNY and original pre-commission vendor partners JCI and York. CUNY and DASNY executives determined the cooling system was poorly designed but, instead of holding vendor partners JCI and York legally accountable, they covered up the fraud, corruption and waste of taxpayers monies because this is a part of the larger problem that taxpayers didn't receive fair value for their tax monies in the construction of AB1.

62. Plaintiff alleges CUNY and DASNY vendor partner Meridian turned over AB1 to CUNY despite the cooling system operating outside of its scope.

63. Plaintiff alleges in or around spring 2012 MEC staff conducts testing on the gas valves and sensors both of which were intentionally not integrated by CUNY and DASNY vendor partners with the BMS and Fire Alarm System.

64. Plaintiff alleges the CUNY and DASNY vendor partner JCI during the construction of AB1, installed both the BMS and Fire Alarm Systems.

65. Plaintiff alleges the original building design established that both systems communicated with each other.

66. Plaintiff alleges although AB1 have over three hundred (300) sensors and house forty (40) laboratories, if an emergency alarm is activated, only occupants within earshot will be able to hear it.

67. Plaintiff alleges other occupants throughout AB1 will be unable to hear the emergency alarm. Nor will first responders (fire and police) receive an immediate automatic notification.

68. Plaintiff alleges the gas sensors intentionally weren't wired, calibrated or integrated with the BMS and Fire Alarm System by CUNY and DASNY vendor partners.

69. Plaintiff alleges several gas valves failed but, the failure rate was MUCH too high to attribute to manufacturing defects.

70. Plaintiff alleges when the failed gas valves were opened and inspected, shipping seals were broken, some had construction debris and oil residue from pipe threading indicating prior usage.

71. Plaintiff alleges CUNY and DASNY vendor partners intentionally installed the faulty gas valves to increase profits for themselves and agents' of CUNY and DASNY.

72. Plaintiff alleges agents' of CUNY and DASNY were notified of this significant

safety issue but, CUNY and DASNY it took no action.

73. Plaintiff alleges since the gas valves weren't functioning as scoped, the BMS and Fire Alarm Systems failing to communicate, this increased the likelihood of a catastrophic system failure endangering the integrity of AB1, its occupants and citizens within the immediate areas surrounding the building similar to the systems failures at John F. Kennedy High School in the Bronx.

74. Plaintiff alleges CUNY and DASNY vendor partner Meridian turned over AB1 to CUNY despite the gas valves not functioning as scoped and the BMS and Fire Alarm System failing to communicate.

75. Plaintiff alleges CUNY and DASNY vendor partner Meridian intentionally covered up fraud, corruption and waste of taxpayers' monies to increase profit for themselves and agents' of CUNY and DASNY.

76. Plaintiff alleges there were constant backups in the Franklin Avenue cellar ladies restroom.

77. Plaintiff alleges CUNY and DASNY hired a vendor partner Richards Plumbing, the original vendor who built the plumbing system to insert a pipe camera to inspect the entire sanitary line but, the vendor intentionally edited out 5-6 seconds of the video.

78. Plaintiff alleges CUNY and DASNY vendor partner Richards Plumbing intentionally covered up fraud, corruption and waste of taxpayers' monies to increase profit for themselves and agents' of CUNY and DASNY.

79. Plaintiff alleges he suspected either a breaching or blocking so, he purchased a pipe camera and discovered a breaching.

80. Plaintiff alleges CUNY and DASNY vendor partner Richards Plumbing

11

intentionally connected the sanitary and storm drain lines behind the restroom or 1st cleanout as a cost saving measure but, such faulty installation caused significant overflow problems.

81. Plaintiff alleges he raised concerns to CUNY and DASNY agents' about potential gas contamination in AB1 because the flow of water will eventually erode the gas vapor barrier and cause gas to enter AB1 compromising the health and safety of the occupants and other stakeholders of AB1.

82. Plaintiff alleges CUNY and DASNY vendor partner Meridian turned over AB1 to CUNY despite the sanitary and storm drain lines being connected as a cost saving measure jeopardizing the health and safety of the occupants and stakeholders of AB1.

83. Plaintiff alleges CUNY and DASNY vendor partner Meridian intentionally covered up fraud, corruption and waste of taxpayers' monies to increase profit for themselves and agents' of CUNY and DASNY.

84. Plaintiff alleges on or about spring 2013 MEC Environmental Health and Safety Officer Mo Bangura reported the underground storage tanks had integrity issues and would have to be emptied in order to conduct a full evaluation and to re-calibrate the sensors.

85. Plaintiff alleges if water entered the tank it could jeopardize the quality of the oil which is used in the boiler and generator.

86. Plaintiff alleges it was agreed to fully inspect the inside of the storage tank after burning off 6,000 gallons thereby, foregoing the need to relocate oil on-site avoiding a potential environmental spill problem.

87. Plaintiff alleges in or around summer 2013 AB1 experiences a brown out.

88. Plaintiff alleges the source of the brown out was traced to a shorted motor from a vibrating exhaust fan.

89. Plaintiff alleges agents of CUNY and DASNY were notified, CUNY sent Engineer Ali Vedaverz to investigate and to ensure the observations were "honest and accurate."

90. Plaintiff alleges CUNY Engineer Ali Vedaverz attempted to reset the breaker despite the fact according to the Code, a licensed electrician MUST do so.

91. Plaintiff alleges it was discovered, vendor partner electricians of CUNY and DASNY intentionally improperly wired the main electrical panels and equipment not properly diagramed. A request was made for fuse coordination to verify the wiring sequences.

92. Plaintiff alleges CUNY and DASNY never authorized the fuse coordination to verify the wiring sequences to cover up fraud, corruption and waste of taxpayers monies.

93. Plaintiff alleges it was also discovered CUNY and DASNY vendor partners intentionally installed inoperable life safety equipment, a generator.

94. Plaintiff alleges CUNY and DASNY vendor partners intentionally failed to wire the Science building to ensure a safe environment to exit in case of an emergency.

95. Plaintiff alleges after borescopes were performed by CUNY and DASNY vendor partners it was determined that each of the AB-1 boilers would have to be re-tubed.

96. Plaintiff alleges CUNY Engineer Ali Vedaverz introduced the re-tubing project but was managed solely by defendant ESTHER HUNDLEY.

97. Plaintiff alleges each boiler re-tubing was estimated to take six (6) weeks to complete but because of CUNY and DASNY'S mismanagement it took several months for each boiler.

98. Plaintiff alleges AB1 had (1) boiler operational during the coldest winter in one hundred (100) years.

99. Plaintiff alleges defendant ESTHER HUNDLEY had personality conflicts with

Manhattan Boiler, a subcontractor for MPN.

100.    Plaintiff alleges defendant ESTHER HUNDLEY eventually removed Manhattan Boiler from the project.

101.    Plaintiff alleges the project exposed the problem of the boiler system's water treatment.

102.    Plaintiff alleges the rust inhibitor introduced by the CUNY and DASNY vendor partner into the water systems discussed earlier resulted in corrosion of the rubber seals.

103.    Plaintiff alleges this resulted in numerous change orders and significant costs to the taxpayers, the reason for the change orders were never identified by CUNY and DASNY.

104.    Plaintiff alleges CUNY and DASNY vendor partner Ambient Water Treatment Consulting Inc. advised CUNY and DASNY to use marine grade rubber valves because he knew the introduction of rust inhibitor into the water system resulted in high levels of toxicity causing the premature erosion of the rubber valve seals.

105.    Plaintiff alleges CUNY and DASNY vendor partner Ambient Water Treatment Consulting, Inc., in collusion with CUNY and DASNY intentionally covered up fraud, corruption and waste of taxpayers' monies in the installation of the boiler water treatment systems to increase profit for themselves and agents' of CUNY and DASNY.

106.    Plaintiff alleges defendant ESTHER HUNDLEY frequently complained to defendant RUDOPLH F. CREW about him and his MEC engineering staff in a concerted effort to have his employment terminated for exposing fraud, corruption, waste of taxpayers' monies in AB1 as employee and citizen.

107.    Plaintiff alleges during the winter of 2014 the AB1 boilers installed by CUNY and DASNY vendor partners were not responding consistently to the master panel controls and

constantly tripping.

108. Plaintiff alleges CUNY and DASNY vendor partner MPN vendor representative Ken Berens was distant and non-responsive as there was significant animosity between him and the agents' of CUNY and DASNY.

109. Plaintiff alleges on December 27, 2014 there was a misfiring of the AB1 boiler aka puff back, MEC Stationary Engineer Paul Point Du Jour reported it to the New York City Department of Buildings consistent with safety protocols.

110. Plaintiff alleges Stationary Engineer Paul Point Du Jour later denied filing the report.

111. Plaintiff alleges Donovan Allen, a DOB Inspector at the time, and groomsman of Stationary Engineer Paul Point Du Jour's wedding arrives on site and issues a violation.

112. Plaintiff alleges on or about February 10th 2015 he went to the Office of the President of MEC defendant RUDOLPH F. CREW to request a personal meeting with him to personally report fraud, corruption and waste of taxpayers' monies in the AB1 building as an employee and citizen.

113. Plaintiff alleges shortly thereafter, defendant JERALD POSMAN terminated him stating it was the "President's decision."

114. Plaintiff alleges the aforementioned deficient life safety systems and other systems place the occupants of AB1 in jeopardy of serious injury or death due to a fire, gas leak or chemical spill, their ability to safely evacuate the building in a timely manner will be impacted due to the delayed notification to the building operator.

115. Plaintiff alleges the integrity of AB1 could be compromised as well further impacting its occupants and the surrounding stakeholders of the community.

15

116. Plaintiff alleges defendants' RUDOLPH F. CREW; JERALD POSMAN and ESTHER HUNDLEY in collusion with CUNY and DASNY retaliated against him, terminating his employment, violating his civil rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983 and the First Amendment of the United States Constitution for reporting that CUNY and DASNY, their agents' and vendor partners intentionally covered up fraud, corruption and waste of taxpayers' monies creating dangerous conditions within the life safety systems and other systems at AB1 compromising the physical safety of employees, students and other stakeholders of the community and avoidable increased construction costs to the taxpayers.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### FREEDOM OF SPEECH
### IN VIOLATION OF
### THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION

117. Plaintiff re-alleges Paragraphs 1 through 116 and incorporates them by reference as Paragraphs 1 through 116 of Count I of this Second Amended Complaint

118. Plaintiff defendants' RUDOLPH F. CREW; JERALD POSMAN and ESTHER HUNDLEY and their agents' interfered with his right to freedom of speech and freedom of expression.

119. Plaintiff alleges he engaged in constitutionally protected speech and expression.

120. Plaintiff alleges he suffered retaliatory actions by defendants' RUDOLPH F. CREW; JERALD POSMAN and ESTHER HUNDLEY and their agents'.

121. Plaintiff alleges the protected speech was a "motivating factor" in the retaliatory actions.

122. Plaintiff alleges defendants' RUDOLPH F. CREW; JERALD POSMAN and ESTHER HUNDLEY in collusion with CUNY and DASNY retaliated against him, terminating his

employment, violating his civil rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983 and the First Amendment of the United States Constitution for reporting that CUNY and DASNY, their agents' and vendor partners intentionally covered up fraud, corruption and waste of taxpayers' monies creating dangerous conditions within the life safety systems and other systems at AB1 compromising the physical safety of employees, students and other stakeholders of the community and avoidable increased construction costs to the taxpayers.

### JURY TRIAL

123.  Plaintiff demands a trial by jury of all issues in this action that are so triable.

### PRAYER FOR RELIEF

Wherefore, plaintiff demands compensatory and punitive damages from defendants' RUDOLPH F. CREW; JERALD POSMAN and ESTHER HUNDLEY and their agents' in an amount to be determined at trial, plus any and all available statutory remedies, both legal and equitable, and interests and costs.

Dated:  July 1, 2016
        New York, NY

                                                      Respectfully submitted,

                                                      By:     _____s_____
                                                               Eric Sanders

                                                      Eric Sanders, Esq.
                                                      **THE SANDERS FIRM, P.C.**
                                                      230 Park Avenue, Suite 1000
                                                      New York, NY 10169
                                                      (212) 808-6515 (Business Telephone)
                                                      (212) 729-3062 (Facsimile)

                                                      Website: http://www.thesandersfirmpc.com